**IN RE: EHC, LLC, Debtor.**

**Case No. 15 B 40866**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Signed January 6, 2017

---

Paul M. Bauch, Kenneth A. Michaels, Jr., Carolina Y. Sales, Bauch & Michaels LLC, Chicago, IL, Nikola Duric, Duric Law Offices, Park Ridge, IL, for Debtor.

## Order on Motion for Sanctions as to Nikola Duric (Dkt. No. 178)

Jacqueline P. Cox, United States Bankruptcy Judge

**Facts and Background**

On April 22, 2016, Attorney Lawrence M. Karlin filed a Motion for Sanctions on behalf of secured creditor 36 Holdings LLC ("36 Holdings") against the Debtor, its principals and its attorneys Paul M. Bauch and Nikola Duric.

After a contested hearing the Motion for Sanctions was denied as to all respondents except Attorney Nikola Duric. The court allowed Mr. Karlin to file Proposed Findings of Fact and Conclusions of Law on or before September 23, 2016. Mr. Karlin filed Proposed Findings of Fact and Conclusions of Law herein on September 21, 2016. Docket Number 252. Mr. Duric was allowed to file Proposed Findings of Fact and Conclusions of Law on or before October 17, 2016. Mr. Duric has not filed Proposed Findings of Fact and Conclusions of Law.

On October 17, 2016, the date on which his Proposed Findings of Fact and Conclusions of Law were due, Mr. Duric filed a Motion to Extend Time, Docket Number 256, in which he noted a September 21, 2016 conversation he had with Mr. Karlin suggesting a compromise of the Motion for Sanctions. Mr. Karlin and another attorney representing Mr. Duric, Adrian Vuckovich, discussed settlement. This matter did not settle. Mr. Duric asked to extend the due date to retain separate bankruptcy counsel to represent him in this matter because he thought that this matter would be resolved. The Motion to Extend Time does not explain why Mr. Duric could not comply by October 17, 2016. Mr. Duric's motion was amended on October 26, 2016 and set for hearing on November 3, 2016, seventeen days after his pleading was due. Mr. Duric could have prepared the pleading during those extra seventeen days.

This court asked on November 3, 2016 if the Proposed Findings of Fact and Conclusions of Law would be filed that day. Mr. Duric was not prepared to file Proposed Findings of Fact and Conclusions of Law on that date. The Motion to Extend was denied and this Motion for Sanctions was taken under advisement. Mr. Duric and his new attorney, Gregory Jordan, had made no efforts to move this matter along. The Motion to Extend was Mr. Duric's latest effort to delay the resolution of this bankruptcy case.

This court also denied Mr. Duric's request to schedule a pretrial conference herein. Based on this court's recall of Mr. Duric's conduct herein, that request was little more than another ploy to delay this matter.

Mr. Karlin seeks reimbursement of all attorney's fees and costs incurred by his client responding to the debtor's bankruptcy cases, including fees incurred in filing and prosecuting the sanctions motion. His request for fees for his attempt to disgorge rent monies will be denied; that request was not legally sound. The balance of the motion is sound; it will be granted.

Steven DeGraff, a lawyer, is the managing member of 36 Holdings. 36 Holdings bought loans of EHC and its related entity, LJBV, Ltd., from Lakeside Bank on April 13, 2015. That transaction closed on April 30, 2015. The Debtor owed $5.4 million on those obligations; the amount due grew to $5.9 million. The loans were cross-collateralized by (1) an office building lo-

cated at 36 W. Randolph Street in Chicago owned by EHC and John Wallace, (2) an industrial building owned by Chicago Trust Company in a land trust with EHC's co-obligor and related entity, LJBV, Ltd., as the beneficiary and (3) unimproved lots located in Door County, Wisconsin.

36 Holdings filed a foreclosure case in the Circuit Court of Cook County, Illinois on June 22, 2015, Case No. 2015 CH 09675, which includes allegations that EHC, LJBV, Robert Voegel and Marlene Voegel signed a promissory note dated April 15, 2010 in the original sum of $4,785,000. The debt was modified on February 10, 2012: the maturity date was extended to February 15, 2014; the interest rate was reduced from 5.75% to 4.5%; and the principal balance was reduced to $3,429,000. A second promissory note was signed on February 10, 2012 for the sum of $1,272,254. EHC and LJBV executed mortgages on February 10, 2012 to secure the second note.

On June 26, 2015, 36 Holdings filed a motion in the foreclosure case for the appointment of a receiver. Mr. Duric appeared in the foreclosure case and filed successive motions for substitution of judge on behalf of the defendants pursuant to 735 ILCS 5/2–1001(a)(2). A receiver was appointed on October 22, 2015. 36 Holdings complains about this. However, this concern will be disregarded because Illinois law allows all parties in civil actions to substitute a judge. This court does not find that effort offensive.

Within hours of the entry of the receiver's appointment Mr. Duric filed bankruptcy case 15–35952 on behalf of EHC and bankruptcy case 15–35961 on behalf of LJBV. The petitions were signed only by Mr. Duric; neither was sworn to by a representative of the debtors. Although EHC and LJBV are related entities in that both are owned by Marlene Voegel and

they are codebtors on the 36 Holdings Loans, LJBV did not disclose EHC as an affiliate also filing a bankruptcy case. Neither debtor filed a list of creditors as required by Federal Rule of Bankruptcy Procedure 1007. Neither debtor filed required schedules or statements of financial affairs. Neither debtor filed a motion seeking leave of court to use cash collateral; neither debtor disclosed compensation paid to counsel. Neither filed an application to retain counsel. Mr. Duric did not seek extensions of time to file the required documents.

Mr. Duric testified that he had not filed a bankruptcy case before filing the 15–35952 and 15–35961 cases. However, he said that he had represented creditors in bankruptcy matters for Fidelity National Title Company. Marlene Voegel's husband, Robert Voegel, testified that it was his understanding from talking to Mr. Duric that he had filed numerous bankruptcy cases. Mr. Duric denied telling Mr. Voegel that. This court believes Mr. Voegel.

In EHC's 15–35952 case both 36 Holdings and the U.S. Trustee filed motions to dismiss. *See* 15–35952, Docket Numbers 8 and 9.

■ On November 25, 2015, this court dismissed EHC's 15–35952 case. The order noted Mr. Duric's insistence throughout this case that the state court was wrong to appoint a certain individual to serve as the receiver. That order noted that the receiver issue could be litigated in state court. Bankruptcy courts, as federal trial courts, do not sit as courts of review of state court orders. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983).

The dismissal order also noted that the debtor had not obtained leave to use cash

collateral regarding rent proceeds; a motion for such was filed but did not have a hearing date as of November 25, 2015.

After the November 25, 2015 EHC dismissal 36 Holdings filed a motion in the foreclosure case for approval of the receiver's bond. On December 1, 2015 when that motion was to be heard EHC filed its second bankruptcy case, 15–40866.

That petition did not disclose the previous case of affiliate LJBV in answer to question 10 and erroneously stated the case number of the previous EHC bankruptcy case in answer to question 9 as 15–25952, when EHC's first case was 15–35952. This lack of information may have lead to that case being assigned to Judge Barnes of this court. That case was reassigned on December 16, 2015. Our Court's Administrative Procedures provide: "[i]f a case is related, as defined by Local Bankruptcy Rule 1015–1, to a case previously pending under Chapter 11 or any presently pending case, it shall be assigned to the judge of the previously assigned case." U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division, Administrative Order 15–07. Was this effort intended to manipulate the court's assignment system?

On January 22, 2016, this court dismissed the related LJBV–1 case number 15–35961 for cause under 11 U.S.C. § 1112(b) noting that "[i]f the debtor's only purpose for filing the case is to delay (or defeat) a single judgment creditor, and the case has little or no ability to benefit the creditor body as a whole, the debtor has not filed the Chapter 11 in good faith." Case 15–35961, Docket Number 52, p. 7.

That seven-page order also notes that the court asked Mr. Duric why the debtor defaulted on its obligation to make mortgage payments at a hearing on January 21, 2016; the question was not answered. *Id.* at 2. The court recalls, however, that owner Marlene Voegel acknowledged being in default but was disappointed that her friends at Lakeside Bank sought to enforce the bank's rights.

Mr. Duric denies that the EHC–2 case was filed to delay the foreclosure case. He argues that it was filed so that the 36 W. Randolph St. property could be sold in bankruptcy to pay the Debtor's creditors and to prevent the receiver, Donald Shapiro, from interfering with the Debtor's efforts to sell the property. A November 4, 2015 contract between EHC and 3L Real Estate, LLC was entered into evidence. The Purchase Price was $6 million and was subject to bankruptcy court approval. The closing was set for December 15, 2015. The first EHC case, EHC–1, was pending when the 3L Purchase Agreement was received by EHC (the first EHC case was dismissed on November 25, 2015). Mr. Duric did not file a motion to sell the property while that first EHC case was pending. Mr. Duric and his clients were not serious about selling the property.

Mr. Duric filed EHC's second bankruptcy case on December 1, 2015, case number 15–40866. On January 20, 2016, Mr. Duric filed a motion to sell the property pursuant to a January 12, 2016 agreement with EL Funding Partnership LLC for $6 million. Case Number 15–40866, Docket Number 56. On January 27, 2016, Attorneys Paul M. Bauch, Kenneth Michaels and Carolina Sales filed appearances herein on behalf of the Debtor.

On October 26, 2015, Mr. Duric sent an email to counsel for 36 Holdings requesting a payoff statement. A payoff statement was sent stating that the payoff amount was $5,744,637.52. The Schedule D in EHC–2, the 15–40866 case, stated that only $4,371,559.74 was due. Case Number 15–40866, Docket Number 9, page 9, filed

by Mr. Duric on December 3, 2015. Mr. Duric knew better by December 3, 2015.

Review of the dockets in cases 15–35952 and 15–40866 show that while Mr. Duric represented EHC in both EHC–1 (15–35952) and EHC–2 (15–40866) no Monthly Operating Reports were filed. Those documents are designed to disclose information about debtors' receipts and disbursements.

A November 16, 2015 motion to use cash collateral in EHC–1, 15–35952, Docket Number 21, included monthly budget information that disclosed that the Debtor took in $39,226 in rental revenue monthly. Those funds should not have been used except upon court order (or with secured creditor consent) since the secured creditor 36 Holdings LLC had an interest in them. See 11 U.S.C. § 363(c)(2)[1]. We know from the testimony of debtor's employee, Hilda Sanchez, however, that the Debtor routinely used those funds without leave of court. She said at the Section 341 Creditors Meeting that she gave bills to Mr. Duric in December, that she was not told not to write checks and that Mr. Duric was working on getting an order from the judge to be able to use the account. He told her to give him the information but to go ahead and cover expenses. Exhibit 78 of 36 Holdings LLC's Witness and Exhibit List for July 28 and 29, 2016 Hearings ("Witness and Exhibit List").

The Amended Statement of Financial Affairs filed in EHC–2 on February 10, 2016 disclosed that the Debtor paid ALSJ, Inc. approximately $109,128.41 during the 90–day pre-petition period. The principal of ALSJ, Inc., Mr. Andy Lee, testified that Marlene Voegel had signed certain promissory notes payable to ALSJ, Inc. on an individual basis in the amount of $282,700.

The funds received were in payment of her personal debt to ALSJ, Inc.

This Court denied Mr. Duric's application to be employed to represent the Debtor in EHC–2 on January 21, 2016. His motion for use of cash collateral was also denied on January 21, 2016 in EHC–2. Case 15–40866, Docket Numbers ·62 and 63. The budget attached to the cash collateral motion showed monthly gross rental income of $39,226 for EHC.

**Unauthorized Use of Cash Collateral**

On February 9, 2016, EHC's successor attorney Paul M. Bauch filed a Summary of Cash Receipts and Disbursements for Filing Period Ending December 31, 2015. Case Number 15–40866, Docket Number 78.

Mr. Bauch sought use of cash collateral on March 3, 2016; that motion was granted on March 8, 2016.

The budget attached to the cash collateral motion showed that the monthly gross revenue of EHC was $39,773. Its expenses, not including payments for taxes, adequate protection to the lender and an escrow were $19,680, with $20,093 in net revenues. Even though EHC had collected the November rents, its cash on hand increased by only $1,266.00. The Statement of Financial Affairs filed by Mr. Duric in EHC–2 (EHC–2, Docket Number 3) on December 1, 2015 was identical in many respects to the Amended Statement of Financial Affairs filed in EHC–1 (Docket Number 17, pp. 2–12 on November 16, 2015), listing only the payments and disbursements by the Debtor through October 22, 2015. It did not account for rents collected by EHC in November and December of 2015. Mr.

---

1. "The trustee may not use, sell or lease cash collateral...unless

    (A) each entity that has an interest in such cash collateral consents; or

    (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

Duric did not file any Monthly Operating Reports in either EHC–1 or EHC–2.

From December 1, 2015 to December 31, 2015, without a cash collateral order, EHC spent $33,450.27, including $3,539.85 for payroll to its employees, $6,832.72 for utilities, $11,661.28 for insurance and $7,587.57 for union benefits. *See* EHC–2, Docket Number 78—Summary of Cash Receipts and Cash Disbursements.

## Sale of Real Estate

While Mr. Duric did not file a motion asking the court to approve a $6,000,000 purchase and sale agreement with 3L Real Estate LLC ("3L"), as required by 11 U.S.C. § 363(b)(1)[2], after 3L suspended the contract, Mr. Duric filed an adversary complaint against Mr. DeGraff alleging that he tortiously interfered with the contract by telling Joseph Slezak, who represented the purchaser, that the $6,000,000 purchase price was not adequate to pay 36 Holdings all that was owed under the mortgage and that he was slated to become the owner of a valuable commercial office building. 36 Holdings was sued too. *See* Adversary Proceeding 15–907, filed on December 22, 2015, Exhibit F.

The purchaser's attorney sent the Debtor a December 8, 2015 letter (before the adversary proceeding was filed) rejecting modifications proposed by the Debtor, including that 3L pay all seller title charges and that 3L be substituted as a defendant in the foreclosure case. That attorney's December 15, 2015 letter noted that 3L reserved its rights under the purchase agreement until zoning, landmark and fire issues got settled. She did not mention the allegedly tortious statements of Mr. DeGraff. *See* Exhibits 32 and 33 of the Witness and Exhibit List.

**2.** 11 U.S.C. § 363(b)(1) provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...".

## Default Interest

Mr. Duric testified that he filed the two EHC cases to contest the imposition of default interest. However, Mr. Duric scheduled the amount due 36 Holdings as $4,371,559.74, more than the $4,259,561.99 amount 36 Holdings showed as due in an October 26, 2015 payoff statement, which included default interest. *See* EHC–1, 15–35952, Docket Number 19 and EHC–2, 15–40866, Docket Number 9 and Payoff Statement in October 26, 2015 email from Attorney L. Karlin, Exhibit Number 81 in the Witness and Exhibit List.

Mr. Duric filed a Schedule D in the LJBV case scheduling its secured indebtedness at $1,322,749.43, more than the $1,281,157.17 amount in the October 26, 2015 payoff statement which included default interest. *See* 15–35961, Docket Number 20 and Exhibit 81.

Mr. Duric's testimony that he filed these cases to challenge the imposition of default interest is not credible. EHC did not contest the imposition of default interest until February 10, 2016 when Mr. Duric's successor filed an Amended Schedule D reducing the amount due to 36 Holdings to $5,317,055. *See* 15–40866, Docket Number 80—Amended Schedule D.

Mr. Duric was that rare attorney who when confronted with the deficiencies in his clients' position, made no effort to cure them. In most cases when an opponent seeks dismissal or sanctions for failure to file or correct something the accused party comes into court and explains the problem or asks for time to cure the situation. Mr. Duric acted insulted that his conduct was challenged and acted as if he was above the law, much like his client Marlene Voegel did when she expressed disappoint-

ment that her friends at Lakeside Bank were trying to enforce their rights in the face of EHC's default.

## Finding that Cases Filed to Delay Creditor

This Court finds that the bankruptcy cases were filed solely to delay the foreclosure case and to multiply 36 Holdings' efforts to enforce its rights and remedies. EHC's schedules were incomplete, Monthly Operating Reports were not filed and neither creditor consent nor court authorization was obtained to use cash collateral. Mr. Duric could care less about proceeding properly in bankruptcy because he sought only to delay and harass EHC's primary creditor, 36 Holdings, and to resist the receiver. His failure to file a motion to sell the building under section 363 of the Bankruptcy Code evidences this.

## Good Faith Inquiry

This Court finds that these case were not filed in good faith, measuring the conduct of Mr. Duric by the standards articulated in *In re Tekena USA, LLC*, 419 B.R. 341, 346–51 (Bankr. N.D. Ill. 2009).

The debtor has few unsecured creditors factor—EHC has few unsecured creditors. This case represents an effort to frustrate and delay the efforts of one secured creditor.

The pre-petition conduct of the debtor has been improper factor—there has been scant information presented about the Debtor's pre-petition conduct; this factor will not weigh against Mr. Duric.

The bankruptcy case allows the debtor to evade court orders factor—the debtor seeks little more than to avoid the state court's appointment of a receiver. This factor weighs against Mr. Duric.

There are few debts to nonmoving creditors factor—this is true for the Debtor. This factor shows a lack of good faith.

The bankruptcy case was filed right after the foreclosure case was initiated—this factor weighs against Mr. Duric as the Debtor's unauthorized use of cash collateral/rent proceeds to pay its principal's debt to ALSJ, Inc., rather than to 36 Holdings, evidences Mr. Duric's serious disregard for bankruptcy procedure.

The real estate in issue is the debtor's major asset—this factor weighs against Mr. Duric.

The debtor has no ongoing business or employees factor—the debtor has three employees; this factor does not weigh against Mr. Duric. Its business as a lessor is questionable, however, since it allows insider tenants to pay what they can afford rather than what the market commands for the spaces leased. As the Debtor's agent and attorney, this factor weighs against Mr. Duric.

There is no possibility of reorganization factor—this is difficult to discern since the real estate has not been put up for sale. The second motion to sell filed in EHC–2 became moot when that case was dismissed on April 12, 2016 on the Motion of 36 Holdings to Dismiss for Cause.

The debtor's income is not sufficient to operate factor—the Debtor's income has been used to pay Marlene Voegel's debt to ALSJ, Inc., not to operate the Debtor. This weighs against Mr. Duric.

Reorganization herein essentially involves the resolution of a two-party dispute—this factor weighs against Mr. Duric. EHC sought to avoid one creditor while not pursuing any benefit for its creditor body as a whole.

The debtor filed solely to create an automatic stay. Mr. Duric filed the cases for EHC and LJBV solely to obtain an automatic stay and has done little else to go forward in these cases.

## Sanctions Under Federal Rule of Bankruptcy Procedure 9011

Rule 9011 provides in relevant part:

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . .

(c) Sanctions.

(1)(A) . . . If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

Fed. R. Bankr. P. 9011(b)(c).

■ This court finds that Mr. Duric violated Rule 9011 when he presented the petitions for bankruptcy relief herein solely to avoid the appointment of the receiver in the state court foreclosure case, which improper purpose caused delay and needless increase in the cost of litigation. *Frederick v. Easty*, 2015 WL 603884, at * 9 (N.D. Ill. February 11, 2015). Note the January 22, 2016 dismissal order in *In re LJBV, Ltd.*, 15–35961 where this court found that case was filed to control who obtained the building upon sale in an effort to make sure that 36 Holdings did not obtain title. This is not an appropriate use of the bankruptcy system. Our system is designed to preserve enterprise value and to give deserving debtors a fresh start. Case 15–35961, Docket Number 52, p. 6.

That order also discusses the debtor's reduction of the rent of an insider from $25,000 a month to $500 a month. *Id.* at 6.

Considering the totality of the circumstances this court hereby orders Mr. Nikola Duric to pay 36 Holdings LLC's attorneys fees and costs incurred in presenting its position in all of the bankruptcy cases filed on behalf of EHC (15–35952 and 15–40866) and LJBV (15–35961). A different attorney filed case number 16–13282 on behalf of LJBV.

This court acknowledges that EHC and LJBV and Mr. Duric are not the only debtors and/or debtor's attorneys who behave this way in Chapter 11 cases. The difference herein is that secured creditor 36 Holdings LLC is the rare creditor who pursues its rights.

36 Holdings LLC may submit a petition outlining the fees and costs it has incurred in pursuing its rights in the EHC and LJBV cases. That petition shall be filed on or before February 11, 2017. Mr. Duric may respond in writing to that petition on or before March 22, 2017. This matter is set for a Status Hearing on March 28, 2017 at 10:30 a.m.